```
          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF KANSAS
```

**DAVID TRAMMELL,**

                       Petitioner,

        v.                                  CASE NO. 05-3354-JWL

**DAVID R. McKUNE and**
**PHILL KLINE,**

                       Respondents.

### MEMORANDUM AND ORDER

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.

**Background**

Petitioner was convicted of three counts of aggravated assault, one count of aggravated robbery, and one count of theft in the District Court of Johnson County, Kansas, in July 2001. The convictions were affirmed on appeal, State v. Trammell, No. 88, 722, 2003 WL 22175781, (Kan. App. Sep. 19, 2003). The Kansas Supreme Court granted Trammell's petition for review and affirmed the lower courts. State v. Trammell, 92 P.3d 1101 (Kan. 2004).

The material facts are not in dispute. On June 22, 1999, John Loper, an employee of an Amoco service station saw the station's tow truck leaving the lot. Loper followed the truck in another vehicle for several blocks to ascertain the driver's

identity. Realizing Loper was in pursuit, the driver of the tow truck first attempted to back into Loper's car and then did a U-turn and drove directly toward Loper's car. Loper's car was struck head-on, and the tow truck then backed up and drove by Loper, passing his car on the passenger side.

Loper returned to the service station and reported the theft and a description of the driver to the Overland Park police. Four days later, Loper saw the driver near the station and reported it to police.

On July 5, 1999, John Kase discovered a man in a tow truck chaining his car to the truck. Kase confronted the driver, who told him the car was being repossessed. When Kase stated there were no liens on the car, the driver told him he had a gun and told him to return to his apartment. When Kase persisted in trying to release his car, the driver went to the truck cab, retrieved a gun, and pointed it at him. Kase then ran to his apartment and called to a neighbor. Both the neighbor and another man who was in Kase's apartment came out and saw the driver. Another friend, John Eglich, drove up on his motorcycle as the tow truck drove away with Kase's car. Eglich pursued the truck a short distance before the driver stopped. The driver again said he was repossessing the car, and when Eglich said there were no liens, the driver pointed the gun at him and drove away.

However, because the car soon came unhitched from the truck, the tow truck driver returned to the apartment complex and nearly struck Kase's neighbor before leaving the area. The car was severely damaged, and Kase reported the matter to Merriam police.

A few days later, police discovered the tow truck at a motel near Kase's apartment while conducting unrelated surveillance. Police later arrested Scott Cross at the motel, and Cross stated the tow truck had been stolen by Trammell.

Loper subsequently identified petitioner from a photo array prepared by Overland Park police, and Kase and Eglich identified him from a different photo array prepared by Merriam police. Trammell was arrested in Raytown, Missouri, on July 10, 1999, and had a gun in his possession at the time of his arrest.

Loper, Eglich, and Kase testified at the trial and identified petitioner as their assailant.

Petitioner also testified at the trial and claimed Cross had framed him for the crimes. He related a history with Cross that arose from their romantic involvement with a woman named Janelle. Petitioner asserted that Cross and Janelle were living together during petitioner's relationship with Janelle and that Cross was jealous of him. He also testified that some of his personal property was stolen during a burglary over the July 4, 1999, holiday and that he suspected Cross and Janelle of the theft. (Trial Rec. pp. 279-82.)

3

Approximately two weeks prior to petitioner's trial, the prosecutor learned that petitioner intended to assert that Cross had framed him. The prosecutor forwarded copies of all police reports involving Cross to the District Attorney's records department to be provided to defense counsel. The prosecutor advised defense counsel that discovery was available, but counsel did not receive the copies until some weeks after the trial.

The relevant police reports state that when he was arrested, Cross had a blue bag that he said belonged to Trammell. In the bag, police found weatherstripping from a motel room near Cross's room. Police previously had observed Cross removing the weatherstripping in an attempt to break into the room. Police also found a box in Cross's room that contained paperwork from the Amoco station from which the tow truck was stolen.

Trammell unsuccessfully sought a new trial based upon the belated disclosure of this evidence.

In this action, petitioner asserts that his convictions must be overturned based upon the untimely disclosure by prosecutors of material, exculpatory evidence in violation of his Fifth Amendment and Fourteenth Amendment rights. He contends that by considering whether the prosecution acted in bad faith in failing to timely produce the police reports, the Kansas Supreme Court applied a rule that was contrary to the Supreme Court's holdings in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. He

also contends the Kansas Supreme Court erroneously applied a standard requiring a showing of a "substantial likelihood of reversal" to establish that the evidence withheld was material. Finally, Trammell argues that he is entitled to relief because his case is materially indistinguishable from a Supreme Court precedent that was resolved differently, Kyles v. Whitley, 514 U.S. 419, 437-38 (1995).

## Discussion

**Standard of review**

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The AEDPA "circumscribes a federal habeas court's review of a state-court decision." Anderson v. Mullin, 327 F.3d 1148, 1152 (10th Cir. 2003) (quotations omitted). This court cannot grant federal habeas relief unless the state courts's adjudication of the claims either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (citing 28 U.S.C. § 2254(d)).

The Supreme Court has determined that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have

5

independent meanings. Bell v. Cone, 535 U.S. 685, 694 (2002). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. at 412-13. A state court's failure to cite the proper Supreme Court precedent does not dictate that the state court's decision is contrary to clearly established federal law; in fact, "the state court need not even be aware of our precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003). "Under the 'unreasonable application' clause, ... the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable.'" Anderson, 327 F.3d at 1153 (citing Williams, 529 U.S. at 409); see also Wiggins v. Smith, 539 U.S. 510, 520 (2003)(same). Legal principles are "clearly established" for purposes of AEDPA review when the holdings of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. See Yarborough v. Alvarado, 541 U.S. 652, 661 (2004).

The AEDPA also substantially restricts the scope of federal habeas review of state court findings of fact. This court must

presume "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003)(citing §2254(e)(1)); see also Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002)). "This presumption does not extend to legal determinations or to mixed questions of law and fact." Id. (citing Herrera v. Lemaster, 225 F.3d 1176, 1178-79 (10th Cir. 2000)). "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'" Id. (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). "Ultimately, ... review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings." Anderson, 327 F.3d at 1152.

**Analysis**

**The Misapplication of Brady by the State Court**

Petitioner asserts the Kansas courts misapplied the Brady standard. "To prove a Brady violation, a petitioner must establish that the State suppressed exculpatory, material evidence." Rojem v. Gibson, 245 F.3d 1130, 1139 (10th Cir. 2001) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). In Strickler, the Supreme Court defined the three components or essential elements of a Brady claim: "'The evidence at issue must be favorable to the

7

accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"  Banks v. Dretke, 540 U.S. 668, 691 (2004)(quoting Strickler, 527 U.S. at 281-82).

Here, the issue is whether the exculpatory evidence found in Cross's motel room was material — that is, whether the failure to disclose the evidence to petitioner prejudiced him under Brady. The State concedes that the first two elements are present: favorable evidence was withheld by the State.  Thus, the court's analysis is constrained to the third element, materiality. "Evidence is material if there is a reasonable probability that, had the State disclosed the evidence, the result of the trial would have been different.  In assessing materiality, this court reviews the undisclosed evidence in light of the record as a whole." Rojem, 245 F.3d at 1139 (citations omitted); see also Youngblood v. West Virginia, 126 S.Ct. 2188, 2190 (2006)(same)(quotation omitted).

> The Supreme Court recently summarized the materiality inquiry:
>
> Our touchstone on materiality is Kyles v. Whitley, 514
> U.S. 419 (1995).  Kyles instructed that the materiality
> standard for Brady claims is met when "the favorable
> evidence could reasonably be taken to put the whole case
> in such a different light as to undermine confidence in
> the verdict." 514 U.S. at 435.  See also id. at 434-435
> ("A defendant need not demonstrate that after discounting
> the inculpatory evidence in light of the undisclosed
> evidence, there would not have been enough left to
> convict."); accord, Strickler, 527 U.S. at 290.  In

>short, [petitioner] must show a "reasonable probability of a different result." <u>Kyles</u>, 514 U.S. at 434 (internal quotation marks omitted) (citing <u>Bagley</u>, 473 U.S. at 678). <u>Dretke</u>, 540 U.S. at 698-99.

Thus, a "reasonable probability" is a probability sufficient to "undermine confidence in the verdict." <u>Kyles</u>, 514 U.S. at 435. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Id</u>. at 434. That standard guides this court in determining whether the Kansas court erred in its analysis.

### 1. The State Court Applied the Wrong Standard

Since issuing its decision in <u>Brady</u> forty years ago, the Supreme Court has consistently held that in assessing the materiality of exculpatory evidence, the courts must not vary the standard of review based on the absence of bad faith by prosecutors. "<u>Brady</u>, we reiterate, held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" <u>Dretke</u>, 540 U.S. at 691 (quoting <u>Brady</u>, 373 U.S. at 87).

The federal courts have granted habeas petitions similar to the petition before this court, and "[w]here petitioners have succeeded in such claims post-AEDPA, it has sometimes been because

9

the state court made an error of law as to the standard to apply." Healy v. Spencer, ___ F.3d ___, 2006 WL 1737402, at *5 (1st Cir. 2006).

In Bailey v. Rae, 339 F.3d 1107, 1118 (9th Cir. 2003), the Ninth Circuit invalidated the standard used by the Oregon courts for reviewing a Brady challenge, finding that "[t]he state court's denial of the Brady claim on materiality grounds was not merely in error, but was both 'contrary to' and an 'unreasonable application of' clearly established Supreme Court precedent." Id. The error occurred because "the state trial court began its inquiry with the wrong legal standard. The court relied primarily on two state court cases in arriving at the federal standards applicable in a materiality inquiry for Brady purposes." Id. By setting a benchmark higher than Brady allows, "[t]he trial court ultimately relied on this overly burdensome standard in rejecting [petitioner's] Brady claim, reasoning that [the] reports could not qualify as material evidence because the court could not find 'any basis [to] conclude [the] evidence would be such as would change the result.'" Id. In the end, the court concluded: "The steep hurdle set by the state court runs contrary to the materiality test that has been set out by the Supreme Court. . . . The application of a 'more probable than not' standard of the type applied by the state court is 'contrary to' clear Supreme Court precedent." Id.

That is precisely the error present in this case. The Kansas

10

Supreme Court improperly considered the lack of bad faith by the prosecution and concluded that the exculpatory evidence was not material because it did not "rise to the level of creating a substantial likelihood of reversal." 92 P.3d at 1115. That standard clearly exceeds what is required under <u>Brady</u> and its progeny.

**Even if the State Court Applied a Standard Contrary to Established Supreme Court Precedent, the Exculpatory Evidence Was Not Material**

Even if the Kansas Supreme Court applied a standard "contrary to" Supreme Court precedent, this does not automatically warrant habeas relief. Instead, this court is required to determine whether, under the proper standard, the suppression of the favorable evidence found in Cross's motel room was material within the meaning of <u>Brady</u>.[1]

Petitioner asserts an examination of the record demonstrates that the police report evidence concerning Cross was material. He first cites the failure to include Cross in the photo arrays shown to Loper, Eglich, and Kase. He claims that had the police reports been made available, "the defense...could have easily

---

[1] Under the third prong of the analysis in <u>Kyles</u>, the court does not in this context engage in a harmless error analysis. Instead, the court simply determines whether, applying the proper reasonable probability standard, the exculpatory evidence was material. <u>See</u> <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1207 (10th Cir. 2003) (citing <u>Kyles</u>, 514 U.S. at 435-36); <u>Mitchell v. Gibson</u>, 262 F.3d 1036, 1062 n.13 (10th Cir. 2001). <u>Accord</u> <u>Hayes v. Brown</u>, 399 F.3d 972, 985 (9th Cir. 2005); <u>Taylor v. Singletary</u>, 122 F.3d 1390, 1394 (11th Cir. 1997).

11

established that the police had been guilty of negligence." (Doc. 8, p. 14.)

That assertion, however, is entirely unsupported by the record. In his brief to this court, petitioner states: "Photographs of Cross were not included in lineups presented to three witnesses, Loper, Eglich, and Kase. 278 Kan. 268. Curiously, however, in the only lineup that included Cross's picture, Cross was identified positively by Beckman." Although that might be literally true, that statement is misleading. The reason Cross's photograph was not included was because the officer preparing the array "did not think Cross looked like Trammell." State v. Trammell, 92 P.3d at 1109. Id. And even if that omission could be attributed to police bias, all three witnesses — Loper, Kase, and Eglich — were, in fact, shown a photograph of Cross, and each witness distinguished petitioner from Cross. Thus, although Cross's photo was not included in the photo arrays, the three witnesses still evaluated his photo and stated in a comparative assessment that he was not the person who robbed them. Finally, Beckman's identification of Cross as the assailant is weaker because he did not view a photo array until the day he testified in petitioner's trial, more than two years after the robbery. He testified that he was "somewhat certain" of the identification. (Trial Rec. pp. 243-49.)

What petitioner does not acknowledge, let alone refute, is

12

that the three witnesses all unequivocally identified him as the robber. The record is clear: "Although Loper viewed a different photographic lineup independent of Kase and Eglich, all three of the victims selected Trammell's photograph." 92 P.3d at 1106. "Two of the witnesses, Kase and Eglich, selected Trammell's picture instantly. Likewise, Loper was very positive in his identification, giving the officer no reason to show him any other photographs." Id. at 1109. The three witnesses even explained to police why they identified Mr. Trammell and not Mr. Cross:

> Contrary to Trammell's claim, the witnesses did not think Cross looked just like Trammell. Although Kase thought Cross looked similar to Trammell, he distinguished Cross' hair color and testified that Cross and Trammell did not look alike. Kase also described Cross differently than the other individuals in the photographic lineup, noting that Cross had brown hair but the men in the lineup all had blonde hair, like Trammell. Loper testified that the photograph of Cross looked similar to Trammell's but distinguished between the two, stating that Cross was not the person driving the tow truck. Id.

In sum, "[a]lthough Cross looked similar to Trammell, the witnesses easily distinguished between the two and consistently identified Trammell as the robber." Id. Thus, petitioner's assertion is false. Far from shielding Cross's identity from the three witnesses, the State allowed them to compare and contrast petitioner's photo with that of Cross. When faced with the two photos, all three witnesses consistently identified petitioner.

Finally, the Kansas Supreme Court evaluated the identifications given by these three witnesses. In an exhaustive

analysis, the Court concluded that the three witnesses had excellent vantage points and, over time, consistently identified petitioner as the robber. See id. at 1110-14. Given the overwhelming evidence based on the persuasive identifications by Loper, Kase, and Eglich, the court concludes that the exculpatory evidence was not material.

**B.   This Case Is Distinguishable from Kyles**

Petitioner alleges that because the State withheld evidence involving a witness who provided information and who had a motive to lie, this case is materially indistinguishable from Kyles v. Whitley, 514 U.S. 419 (1995). The court does not agree.

In Kyles, the Court made clear that the eyewitness identifications varied significantly and that the newly-introduced evidence cast doubt on virtually every important piece of evidence in the case. See 514 U.S. at 451. Thus, Kyles presents a unique set of facts.

Facing a similar challenge, the court in Moore v. United States, 846 A.2d 302 (D.C. 2004), rejected an appeal based on the same lockstep comparison to Kyles that petitioner makes here. In that case, the court initially observed that the case before it "differs markedly from Kyles, on which appellant places heavy reliance." 846 A.2d at 307. As in this case, the prosecution belatedly produced evidence to the defendant, and the defendant alleged this required reversal under Kyles. The court, however,

14

rejected any analogy to the facts in Kyles: "In the case before us, by contrast, three eyewitnesses in addition to the victim, none of whom had motives to falsify [], identified appellant as the shooter. The likelihood that all four had mistakenly convinced themselves of appellant's identity simply does not impress us as reasonable, and therefore the belated disclosure of [the evidentiary] statement does not undermine our confidence in the verdict." Id.

That analysis, applied here, distinguishes the facts in Kyles from the facts in this case. The evidence, which was received by the defense after the trial, does not negate the convincing testimony of three eyewitnesses who identified petitioner as the robber without hesitation and without any alleged inconsistency.[2]

In sum, "[p]etitioner has satisfied two of the three components of a constitutional violation under Brady: exculpatory evidence and nondisclosure of this evidence by the prosecution. . . . However, petitioner has not shown that there is a reasonable

---

[2] The Kansas Supreme Court's opinion applied State v. Hunt, 69 P.3d 571 (Kan. 2003), which rests on the analysis established by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188 (1972) for assessing reliability in pretrial identifications. Hunt, 69 P.3d at 575. The Kansas Supreme Court explained, in detail, the consistency of the eyewitness testimony from Loper, Kase, and Eglich. Each of these witnesses had a good opportunity to view the robber, and each identified the petitioner as his assailant. Not only did they identify Trammell as the robber, but they also explained that he looked nothing like Cross.

15

probability that his conviction [ ] would have been different had these materials been disclosed." Strickler v. Greene, 527 U.S. at 296. The suppressed evidence does not cast any doubt on the eyewitness identifications, and the evidence discovered in Cross's motel room is consistent with petitioner's testimony that Cross stole items from him.

### Conclusion

Having examined the entire record, the court concludes that although the Kansas Supreme Court failed to apply the standard established in Brady v. Maryland, the exculpatory evidence was not material and does not warrant the grant of a new trial. Likewise, this matter is distinguishable from the decision in Kyles v. Whitley. Accordingly, the petition for habeas corpus is denied.

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed and all relief is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED: This __2nd__ day of August, 2006, at Kansas City, Kansas.

**/s/John W. Lungstrum**
JOHN W. LUNGSTRUM
United States District Judge